# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8331 | **DATE** | 9/30/2003 |
| **CASE TITLE** | Tong vs. Direct Trading Corp., et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint or, in the alternative, to Transfer Venue to the Northern District of Texas

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached opinion and order, the Court grants Defendants' alternative Motion to Transfer Venue to the United States District Court for the Northern District of Texas [27-2], and denies Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Improper Venue [27-1] as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 0 1 2003 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

OCT 0 1 2003

JOSEPHINE TONG, )
)
Plaintiff, )
)
v. ) Case No. 02 C 8331
) Honorable Charles R. Norgle
)
DIRECT TRADING CORP., DIRECT )
TRADING GP, INC., DIRECT TRADING )
INSTITUTIONAL, INC., DIRECT )
TRADING MANAGEMENT, L.P., MARK )
GULIS, ALLAN PETERSON, )
)
Defendants. )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge:

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Improper Venue, or in the alternative, to Transfer Venue to the United States District Court for the Northern District of Texas. For the following reasons, the Court grants Defendants' alternative Motion to Transfer Venue to the United States District Court for the Northern District of Texas, and denies Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Improper Venue as moot.

### I. BACKGROUND[1]

Plaintiff, Jospehine Tong ("Tong"), is an Asian-American woman. See Pl.'s Second Am.

---

[1] The background information is taken from the parties' pleadings, including attached affidavits. The Court accepts as true uncontested facts, see, e.g., Saylor v. Dyniewski, 836 F.2d 341, 342 (7th Cir. 1988), but where the facts are in dispute, the Court accepts Tong's version. See, e.g., Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987).

1

33

Compl. ¶ 62; Pl.'s First Am. Compl. ¶ 49. In February 2000, Tong began her employment with Defendant Direct Trading Corp. as a sales representative. See id. ¶ 12; see id. ¶ 10. Direct Trading Corp. is a Texas corporation and has its principal place of business in Irving, Texas. See id. ¶ 4; see id. ¶ 4. Direct Trading Corp. sells computer software that allows clients to trade stocks, options and other investments over the Internet. See id. ¶ 10; see id. ¶ 10. Tong's employment consisted of selling this software, and she was compensated by way of commissions and bonuses. See id. ¶ 11; see id. ¶¶ 10, 11. Tong performed her employment from her home in Chicago, Illinois, and Direct Trading Corp. equipped her home-office with all necessary equipment and services. See id. ¶ 14; see id. ¶ 13; see also Defs.' Motion to Dismiss, or in the Alternative, to Transfer, Ex. A, Affidavit of Gulis, ¶ 7. Yet, all of Direct Trading Corp.'s decisions and activities concerning the direction and supervision of Tong's performance occurred from Irving, Texas. See Defs.' Motion to Dismiss, or in the Alternative, to Transfer, Ex. A, Affidavit of Gulis, ¶¶ 5,7.

Though Tong was employed solely by Direct Trading Corp., she alleges that all of the named Defendants collectively conspired and carried out a series of actions whereby she was discriminated against on the basis of her race. According to Tong, as her productivity increased, Defendants implemented a scheme to deprive her of the additional compensation to which she was entitled. See Pl.'s Second Am. Compl. ¶ 20; Pl.'s First Am. Compl. ¶ 16. Specifically, Tong alleges that Defendants Mark Gulis and Allan Peterson told her that she was required to obtain a Series 63 license in order to obtain her bonus payments; however, other non-Asian employees did not have their compensation qualified in such a manner. See id. ¶ 21; see id. ¶¶ 17, 18. Tong alleges that Defendants withheld her compensation beginning in November 2000. See id. ¶ 24; see id. ¶ 19. In April 2001, Tong obtained a Series 63 license, but alleges that Defendants continued to withhold her

compensation. See id. ¶ 28; see id. ¶ 30.

On June 12, 2001, Tong attended a meeting with Defendants in Irving, Texas. See id. ¶ 29; see id. ¶ 31; see also Defs.' Motion to Dismiss, or in the Alternative, to Transfer, Ex. A, Affidavit of Gulis, ¶ 11. At this meeting, Tong's performance was reviewed, and Tong alleges that Defendants promised to pay her all compensation due in a series of three installments. See id. ¶ 29; see id. ¶¶ 31-33. Despite these assurances, the installments were not forthcoming, and Tong alleges that her compensation was given to other sales representatives by reassigning several of her accounts. See id. ¶ 30; see id. ¶ 36. In response, Tong sent a letter to Defendants on June 15, 2001 stating that she believed that she was the victim of discrimination on the basis of race and gender. See id. ¶ 31; see id. ¶ 37.

Ultimately, on July 11, 2001, Defendants refused to give Tong the compensation she alleges that she was entitled to receive. See id. ¶ 33; see id. ¶ 46. The following day, Tong's employment ceased, as she alleges that she was constructively discharged. See id. ¶ 36; see id. ¶ 47.

On November 15, 2002, Tong filed a complaint alleging that Defendants had violated 42 U.S.C. § 1981 by discriminating and retaliating against her on the basis of her race. [Docket Entry 1-1]. In response to that complaint, Defendants filed a motion to dismiss, or in the alternative, to transfer the case to the United States District Court for the Northern District of Texas. [Docket Entry 7-1]. Upon review of Tong's complaint, the Court ruled that Defendants' motion was moot, because Tong had failed to properly plead subject matter jurisdiction.[2] [Docket Entry 16-1]. The Court gave Tong 21 days within which to filed an amended complaint, and Tong did so. [Docket Entry 17-1].

---

[2] In that order, the Court referenced Defendants' motion to dismiss, or in the alternative, to transfer, by stating that the motion "cursorily appears to be meritorious." See Order of April 2, 2003 [16-1].

Tong's First Amended Complaint cured the jurisdictional defects highlighted by the Court's order, again raising only one count for violation of 42 U.S.C. § 1981.

Once again, the Defendants filed a renewed motion to dismiss, or in the alternative, to transfer the case to the United States District Court for the Northern District of Texas. [Docket Entry 18-1]. The Court entered numerous briefing schedules on that motion, granting Tong extensions of time to file. [Docket Entries 19-1; 20-1; 21-1; 24-1]. However, Tong never filed a response to that motion. Instead, Tong filed a Second Amended Complaint. [Docket Entry 26-1]. However, the Second Amended Complaint was filed without obtaining leave of court or by written consent of the adverse parties.[3] See Fed. R. Civ. P 15(a). Tong's Second Amended Complaint contained six counts: Count I - Illinois Sales Representative Act; Count II- Illinois Wage Payment and Collection Act; Count III - Breach of Contract; Count IV - Unjust Enrichment; Count V - Quantum Meruit; and Count VI - 42 U.S.C. § 1981. Those counts all arose from the same set of facts set forth in Tong's Complaint and First Amended Complaint.

Yet again, the Defendants filed another motion to dismiss, or in the alternative, to transfer the case to the United States District Court for the Northern District of Texas. [Docket Entry 27-1]. This motion is fully briefed and ready for ruling.

## II. DISCUSSION

Defendants' motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), alleging that venue is improper in the Northern District of Illinois.

---

[3] The Court is not ruling on whether Tong's Second Amended Complaint should be stricken. This is an issue better addressed in the transferee court. For this reason, the Court provides citations to both Tong's First Amended Complaint and Second Amended Complaint in ruling on the instant motion.

Defendants' alternative motion to transfer is brought pursuant to 28 U.S.C. § 1404(a), alleging that the Northern District of Texas is the appropriate forum for this litigation.

In the interests of justice, the Court will proceed to address the motion to transfer brought pursuant to 28 U.S.C. § 1404(a). Regardless of whether venue, and necessarily this court's personal jurisdiction over all Defendants, is proper in the Northern District of Illinois, the following analysis of the factors to consider in deciding a motion to transfer indicate that this claim would be best brought in the Northern District of Texas. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) (holding that district courts may grant a petition to transfer under § 1404(a) or §1406(a) whether or not such courts have personal jurisdiction over the defendant).

The only difference between a motion brought pursuant to § 1404 versus § 1406 hinges on whether venue is proper in the court addressing the motion to transfer. Assuming, without deciding, that venue is proper in the Northern District of Illinois, the Court will address Defendants' alternative argument under § 1404(a).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). Under § 1404, transfer is proper if: (1) venue is proper in both the transferor and transferee court; (2) the transfer is for the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. See Boyd v. Snyder, 44 F. Supp. 2d 966, 968 (N.D. Ill. 1999). The moving party bears the burden of demonstrating, "by reference to particular circumstances, that the transferee forum is clearly more convenient." See Heller Financial, Inc v. Midwhey Powder Co. Inc., 883 F.2d 1286, 1293 (7th Cir. 1989). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is

5

committed to the sound discretion of the trial judge." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986).

## A. Venue Would be Proper in the Northern District of Texas

Based on Tong's claim brought pursuant to 42 U.S.C. § 1981, venue in this matter is governed by 28 U.S.C. § 1391(b). Section 1391(b) provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (2003). Under this statute, venue would be proper in the Northern District of Texas based on § 1391(b)(1) and (2).

It is undisputed that all Defendants reside in the Northern District of Texas. The corporate Defendants, Direct Trading Corp., Direct Trading GP, Inc., Direct Trading Institutional, Inc. and Direct Trading Management, L.P., are Texas corporations whose principal place of business are in Irving, Texas. See Pl.'s Second Am. Compl. ¶ 4; Pl.'s First Am. Compl. ¶ 4. The individual Defendants, Allan Peterson[4] and Mark Gulis, are citizens of the State of Texas. See id. ¶ 8,9; see id. ¶ 8,9. As such, venue is proper in the Northern District of Texas. See 28 U.S.C. § 1391(b)(1).

Further, a substantial part of the events or omissions giving rise to Tong's claims occurred in the Northern District of Texas. The distillate of Tong's claims are that the Defendants have failed to pay commissions which she has earned, and have treated her differently than other non-Asian employees. All of Defendants' decisions and activities concerning the direction and supervision

---

[4] Defendant Peterson has not been served.

of Tong's performance occurred from Irving, Texas. See Defs.' Motion to Dismiss, or in the Alternative, to Transfer, Ex. A, Affidavit of Gulis, ¶¶ 5,7. Tong also alleges that she visited the Defendants in Irving, Texas to discuss the issue of her compensation, and was constructively discharged shortly thereafter. See Pl.'s Second Am. Compl. ¶¶ 29, 36; Pl.'s First Am. Compl. ¶¶ 31-35, 47; see also Defs.' Motion to Dismiss, or in the Alternative, to Transfer, Ex. A, Affidavit of Gulis, ¶ 11. As such, a substantial part of the events of omissions giving rise to Tong's claims occurred in the Northern District of Texas. See 28 U.S.C. § 1391(b)(2).

### B. Convenience of the Parties and Witnesses

An analysis of the convenience of the parties and witnesses leads the Court to find that transfer to the Northern District of Texas is appropriate. The convenience of the parties and witnesses is the most important factor to be analyzed under 1404(a). See Dunn v. Soo Line R. Co., 864 F. Supp. 64, 65 (N.D. Ill. 1994). In evaluating the convenience and fairness of the proposed transfer, the court considers: (1) plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof in each forum, including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses; and (4) the convenience to the parties – specifically, their respective residences and abilities to bear the expense of trial in a particular forum. See Medi USA v. Jobst Inst. Inc., 791 F. Supp. 208, 210 (N.D. Ill. 1992); see generally 15 Charles A. Wright, Arthur R. Miller & E. Cooper, Federal Practice and Procedure §§ 3849-53 (1986). The Court also considers whether the parties have met their burden of specifically identifying the witnesses they intend to call, as well as the general content of the witnesses' proposed testimony. See Heller Financial, 883 F.2d at 1293.

### *(1) Tong's Choice of Forum*

Tong's choice of forum is entitled to substantial weight, particularly when it is her home forum. See United Air Lines, Inc. v. Mesa Airlines, Inc., 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998). However, if "the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value." Dunn, 864 F. Supp. at 65.

In this, case, Tong's preference has minimal value because all of Defendants' decisions and activities concerning the direction and supervision of Tong's performance occurred from Irving, Texas. See Defs.' Motion to Dismiss, or in the Alternative, to Transfer, Ex. A, Affidavit of Gulis, ¶¶ 5,7. Only the effects of those decisions and activities where felt by Tong in the Northern District of Illinois. Tong argues that because of those effects venue must be placed here, and relies on Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership, 34 F.3d 410 (7th Cir. 1994) for that proposition. However, Tong's reliance on Indianapolis Colts for such a proposition is misplaced. The Indianapolis Colts decision concerned personal jurisdiction rather than venue. See Santa's Best Craft, LLC v. Janning, No. 02 C 9529, 2003 WL 21504522, at *2 (N.D. Ill. June 30, 2003). While Tong felt the effects here, it is the Defendants' conduct that occurred in Irving, Texas which gave rise to her claims. See Dunn, 864 F. Supp. at 65.

### *(2) Situs of Material Events*

As already indicated, all of Defendants' decisions and activities concerning the direction and supervision of Tong's performance occurred from Irving, Texas. See Defs.' Motion to Dismiss, or in the Alternative, to Transfer, Ex. A, Affidavit of Gulis, ¶¶ 5,7. Defendants' only connection with the Northern District of Illinois was that Tong was allowed to live in Chicago, Illinois while she performed her employment duties. See Pl.'s Second Am. Compl. ¶ 14; Pl.'s First Am. Compl. ¶ 13.

Defendants also equipped Tong's home-office in Chicago with necessary supplies. See id.; see id. However, what is material to Tong's claims are the decisions made with regard to her compensation. Tong makes no allegations that any such decisions were made in the Northern District of Illinois, and Defendants' allegations that all such decisions occurred in the Northern District of Texas are undisputed. Further, Tong is alleging that Defendants engaged in a far-ranging conspiracy to discriminate against her on the basis of her race. The participants in this far-ranging conspiracy against Tong include four corporations, two individuals, and an additional unknown number of persons, such as those who benefitted from the reassignment of Tong's accounts, to be disclosed in discovery. The alleged participants in that conspiracy are all located in Irving, Texas, the discriminatory decisions would likely have occurred there as well, and any evidence concerning that conspiracy would also be found in Irving, Texas. For this reason, the litigation should occur "closer to the action." See Paul v. Land's End, Inc., 742 F. Supp. 512, 514 (N.D. Ill. 1990) (stating that the "administration of justice is served more efficiently when the action is brought before a court that is 'closer to the action'").

### *(3) Relative Ease of Access to Sources of Proof in Each Forum*

Once again, all pertinent employment records and documents concerning Tong are located at the Defendants' headquarters in Irving, Texas. Tong also indicates that she has copies of certain records and documents; however, she does not describe these or indicate that she has copies of all such documents that are located in Irving, Texas. Further, Defendants' employees who had contact with Tong, or made decisions concerning her employment and compensation, are all located in Irving, Texas. As such, the vast majority of discovery would take place in Texas. Also, a district

court in Texas would be better able to deal with any discovery related issues that may arise, including the power to compel the appearance of unwilling witnesses.

*(4) Convenience to the Parties – Specifically, Their Respective Residences and Abilities to Bear the Expense of Trial in a Particular Forum*

Defendants have indicated a number of the witnesses that are likely to be involved in this case, and have described the general content of the witnesses' proposed testimony. See Heller Financial, 883 F.2d at 1293. The potential witnesses identified by Defendants reside in Texas. The only witness that resides in the Northern District of Illinois is Tong. As such, the costs of obtaining the attendance of witnesses would be minimized if this case were transferred.

Tong argues that between an individual and the group of corporate Defendants, it would be less burdensome for Defendants to litigate outside of their home State. In contrast, Defendants argue that since they possess all relevant witnesses and documents, it would be less burdensome for Tong to litigate outside of her home State. "It is axiomatic that litigating outside of one's home forum is always more burdensome than litigating at home." Clearclad Coatings, Inc. v. Xontal Ltd., No. 98 C 7199, 1999 WL 652030, at *11 (N.D. Ill. 1999). However, as neither party demonstrates that litigation outside of their respective home States would be truly burdensome, this factor is neutral.

**C. Interest of Justice**

The third element, "the interest of justice," pertains to the "efficient administration of the court system," and is a distinct and "separate component of a § 1404(a) analysis." See Coffey, 796 F.2d at 220-21. In other words, the element may require a court to deny a motion to transfer, even though the court would otherwise find the original forum to be inconvenient for the parties and witnesses. See id. The interest of justice element includes factors such as each forum's relationship

to the cause of action, each court's likely access to the sources or proof and other evidence, and each court's familiarity with the applicable law. See Dunn, at 66.

As indicated above, this Court's relationship to Tong's claims arise only because she resides here. The vast majority of the conduct giving rise to Tong's claims, as well as the witnesses and sources of proof and other evidence, bear relationship to the Northern District of Texas. The last factor concerning each court's familiarity with the applicable law requires additional consideration. All of Tong's complaints have contained a claim for violation of 42 U.S.C. § 1981, and as such any federal district court is capable of handling such a claim. See Gen 17, Inc. v. Sun Microsystems, Inc., 953 F. Supp. 240, 243 (N.D. Ill. 1997). Tong's Second Amended Complaint also contains two claims for violations of Illinois law: the Illinois Sales Representative Act and the Illinois Wage Payment and Collection Act. As a threshold matter, Tong's Second Amended Complaint was filed without leave of court, and as such could be stricken.[5] However, even if that complaint stands after transfer, the fact that this Court would presumably have had more experience with such Illinois laws does not warrant retention of the case where the totality of all of the factors considered militate that the case be transferred. See Paul, 742 F. Supp. at 514 (stating that the "administration of justice is served more efficiently when the action is brought before a court that is 'closer to the action'").

---

[5] See supra note 3.

## III. CONCLUSION

In conclusion, Defendants have met their burden of demonstrating that the Northern District of Texas is clearly the more convenient forum, and have shown that transfer will promote the efficient administration of justice. For the reasons stated above, the Court grants Defendants' alternative Motion to Transfer Venue to the United States District Court for the Northern District of Texas, and denies Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Improper Venue as moot.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 9-30-03